UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO: 08-128

KERN CARVER BERNARD WILSON                  SECTION: J

## ORDER AND REASONS

Before the Court is Defendant Kern Carver Bernard Wilson's
**Motion for New Trial (Rec. Doc. 105)**.  The present motion
incorporates in part the arguments presented in Wilson's Rule 29
motion for judgment of acquittal, which this Court denied on
April 9, 2009 (Rec. Doc. 104).  The Court has received and
reviewed Wilson's **Motion for Leave of Court to File Supplemental
New Trial Memorandum** - which the Court now grants - and has
reviewed the supplemental memorandum accordingly.  After review
of the motion, the record, the memoranda of counsel, and the
applicable law, the Court now concludes that the motion should be
denied for the reasons that follow.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

Wilson was convicted by a jury on April 1, 2009, of Counts 1
and 4 of the four-count indictment in this matter (Rec. Doc. 98).
Count 1 charged Wilson with conspiracy to bribe a public
official, namely Raul Miranda, by offering him money in return
for confidential bid information concerning the Lake Cataouche
Levee project ("the Project"), in violation of 18 U.S.C. §

201(b)(1)(B).  Count 4 charged Wilson with a substantive count of bribery, namely his acceptance or agreement to accept a bribe in his capacity as a Corps of Engineers ("Corps") contractor and public official in return for disclosure of confidential bid information on the Project, in violation of 18 U.S.C. § 201(b)(2)(B).  The Court's instructions indicated to the jury that both Wilson and Miranda were public officials for purposes of the charged crimes.

## THE PARTIES' ARGUMENTS

In addition to his re-urging of the arguments in support of his previously denied Rule 29 motion, Wilson contends as his first ground for a new trial that his and Miranda's "public official" status constitutes an element of the crime of bribery, such that the Court's instruction that he and Wilson were public officials deprived him of his right to a trial by jury on that element.  Wilson notes that § 201 defines "public official" as a:

> Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror;

18 U.S.C. § 201(a)(1).  Wilson further notes that the provisions of § 201(b)(2)(B) prohibit bribery by any person "being a public official."  Id. at § 201(b)(2).  Based on these provisions,

Wilson argues that his own and Miranda's public official status was each an *element* of the charges in Counts 1 and 4, respectively, and that he is thus entitled to a new trial for "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 477 (2000) (citing United States v. Gaudin, 515 U.S. 506, 510 (1995)).

Second, Wilson argues that the Court should not have permitted the testimony of the Government's witness Sean Clayton regarding Wilson's alleged deletion of emails from his Corps account. Clayton testified, based on his review of records obtained from Wilson's Corps email account relevant to the period of the charged offenses, that Wilson had deleted most of his *sent* email for that period.[1] Wilson contends that Clayton's testimony was improper lay opinion testimony. Wilson notes that Clayton was not presented as an expert, nor was the substance of his testimony on this crucial issue revealed until five days before the trial with other Jencks materials. Likewise, Wilson notes that the Government did not introduce the underlying records on

---

[1] Clayton's conclusion was based on the fact that (A) Wilson's sent folder had zero sent emails for the relevant period but that (B) Wilson's in-box included *reply* emails to Wilson that had been sent in response to emails that Wilson originally sent during that same period. Thus, because Wilson's in-box contained reply emails sent in response to emails originated from his account during the relevant period, Clayton concluded that Wilson had deleted those original emails from his sent box.

3

which Clayton's testimony was based.  Wilson argues that
Clayton's testimony as a lay opinion witness was based on
circumstances beyond his personal knowledge: he did not
personally observe Wilson's email account, but merely reviewed a
record of that account prepared by some unknown third party.
Wilson further argues that while Clayton testified that Wilson
deleted emails from his *account*, Clayton did not address, nor
could he have addressed, whether those allegedly purposefully
deleted emails were erased from the Corps *server* through which
Wilson's account was administered.

    In the end, Wilson contends that Clayton's lay opinion that
Wilson intentionally deleted incriminating emails was beyond the
scope of his lay expertise.  Wilson asserts that to the extent
allegedly lay opinion testimony "results from a process of
reasoning which can be mastered only by specialties in the
field," that testimony must be analyzed under Rule 702 governing
expert testimony.  See, e.g., <u>Asplundh Mfg. Div. v. Benton Harbor
Eng'g</u>, 57 F.3d 1190 (3d Cir. 1995); <u>United States v. Garcia</u>, 413
F.3d 201, 215 (2d Cir. 2005) ("a lay opinion must be the product
of reasoning processes familiar to the average person in everyday
life").  Wilson argues that over forty-five email programs are in
common use in the United States, and that the inner workings of
those programs, especially in relation to whether the deletion of
emails was intentional, is not a matter of everyday knowledge.

Wilson argues that the Government improperly called Clayton in the guise of a lay witness to offer what was (or should have been) actual expert opinions, all in violation of Rules 701 and 702 of the Federal Rules of Evidence as well as Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure.

Third, and in relation to the issues with Clayton's testimony, Wilson argues that the Court improperly excluded the testimony of Wilson's proffered expert in the field of general computer software, Jonathan Stroud, on the grounds that his testimony was irrelevant under Rule 702 and Daubert. Wilson notes that Stroud was called as a last minute emergency witness, in response to the surprise testimony of Clayton, to show that the allegedly deleted emails were actually stored in the Corps' server. Wilson concedes that Stroud, an impromptu witness, was unable to testify as to exactly how the Corps' server was configured, given that he had not examined the server himself. However, Stroud did indicate at the Daubert hearing that he was practically certain that the server would have preserved Wilson's allegedly deleted emails regardless of any instruction to delete them.[2] Wilson contends that Stroud's admitted inability to

---

[2] Wilson notes his testimony at trial that he did not intend to delete his emails, but merely wanted to save them in a separate file on his computer. Wilson points out that he was unable, due to the surprise nature of Clayton's testimony, to obtain Corps records documenting the history of difficulties with his email account, which led him to utilize the system of deleting sent email from his account then saving them to his

testify as to the precise manner of operation of the Corps'
server should not have resulted in his exclusion, but should have
been an issue for the jury to determine.

Finally, Wilson argues that the Court's exclusion of
Defendant Heinrich's witnesses Eddie Renton and Jack Tittle
precluded Wilson from arguing that Heinrich's statements to
Michael Mayeaux - which the Government relied on as a major piece
of evidence in proving that Wilson and Heinrich conspired to
bribe Miranda - were mere puffery.  Specifically, Renton would
have testified that Heinrich had no contract in place to provide
sand for her to sell to Manson Gulf; and Tittle would have
testified that Heinrich did not own land in Franklinton from
which she could obtain dirt to use as fill in a contract with
Manson Gulf.  Wilson argues that these witnesses would have shown
that Heinrich's assertions to Mayeaux were mere posturing
intended to impress Mayeaux so that Heinrich would get the
contract with Manson Gulf.  Wilson argues that this evidence
regarding Heinrich's modus operandi as an exaggerator would have
supported his defense that Heinrich's statement to Mayeaux that
she had "taken care of her guys in the Corps" was also merely an
exaggeration.

In opposition, the Government initially points out that
several of the issues raised in Wilson's motion were ruled on

computer, as he described during his testimony.

prior to trial via motions in limine.  Nonetheless, Wilson and

Heinrich attempted to offer evidence at trial that was irrelevant

to any valid defense, and the Court properly excluded such

evidence.  Additionally, the Government argues that Wilson waived

some of the arguments that form the basis of his request for a

new trial by failing to raise them during or prior to trial.

As for Wilson's arguments regarding the Court's instruction

that he and Miranda were "public officials" for purposes of §201,

the Government notes that the Court has already decided that

Wilson and Miranda were public officials *as a matter of law*.

Further, the Government notes that Wilson's reliance on United

States v. Sun Diamond Growers of California, 526 U.S. 398

(1999),[3] a case which dealt with a different subsection of §201

(and thus a different crime) and did not discuss the definition

of "public official," is completely irrelevant.  Likewise, the

Government argues that Wilson's reliance on Apprendi, a case that

dealt solely with the constitutional requirement that a jury must

determine any fact other than a prior conviction in order for an

increased sentence based on that fact, is entirely unfounded.  As

for Wilson's reliance on Gaudin, the Government notes that it is

(1) cited for the first time in Wilson's motion for new trial and

---

[3]  It should be noted that although the Government addresses
the Sun Diamond case in opposition to Wilson's motion for new
trial, the case was only cited by Wilson in his Rule 29 motion,
which has previously been denied.

(2) without any argument as to how it is relevant to this case. Nonetheless, the Government points out that Wilson and Miranda's status as public officials is *purely* a legal issue - not a mixed issue of law and facts like the one before the Gaudin Court - and thus was properly the subject of a jury instruction and not subject to any factual finding by the jury.

Regarding Wilson's grounds for new trial related to Clayton's testimony, the Government contends that Clayton testified simply as a lay opinion witness based on his investigation related to the charges in this case. The Government asserts that Clayton's testimony regarding his observation that Wilson's sent folder contained no emails during the period of the conspiracy, as well as his conclusion based on that observation that Wilson had deleted his sent mail, was precisely the type of lay opinion testimony that Rule 701 allows. The Government further argues that Wilson's allegation that Clayton's testimony regarding the emails was disclosed a mere five days before trial is misleading. Specifically, the Government notes that at or shortly after Wilson's arraignment in this matter, the Government provided Wilson with all of his Corps emails, a simple review of which would have revealed the absence of any sent emails during the period of the conspiracy. The Government contends that Wilson knew or should have known that, in the context of the conspiracy charges against him, the

Government would likely utilize the email evidence in support of its case. Further, the Government notes that it did in fact disclose Clayton's testimony five days before trial with other Jencks materials, and thus Wilson had sufficient time to prepare any rebuttal or response to that testimony.

As for the exclusion of Wilson's expert Stroud, the Government initially points out that Wilson *did not give notice of his intent* to call Stroud, despite the fact that he had aware for at least five days of the Government's intent to call Clayton to testify regarding the email issue. Likewise, the Government notes that Stroud did not personally review the emails about which he intended to offer testimony, and did not file the pre-trial report required of an expert witness. Finally, the Government argues that the Court's decision to exclude Stroud was correct due to the fact that Stroud was *not competent to testify* regarding Wilson's emails or the administration of the Corps' email servers. The Government again notes that Stroud himself testified at the Daubert hearing that he had *no personal knowledge* of the Corps' systems and *did not personally review* Wilson's emails. To properly testify as an expert, Stroud was required to have personal knowledge about the subject matter of his testimony, or an opinion based on his own perceptions or facts within his knowledge. See Fed. R. Evid 602, 703. Because Stroud had neither, the Government argues that the Court's

decision to exclude Stroud was proper.

Finally, as for the exclusion of the testimony of Renton and Tittle, the Government initially notes that Wilson did not raise any argument regarding the exclusion of these witnesses at trial, and thus waived any such argument. Further, even if any such argument were not waived, the Government argues that whether Heinrich was able to follow through with her plans regarding the Project *has nothing to do with whether she offered and Wilson accepted a bribe.* The Government notes that it argued before and during trial that the "puffery" and "impossibility of completion" defense espoused by the defendants were improper. As such, the Government argues that exclusion of Tittle and Renton was proper.

## DISCUSSION

### A. Standards for Fed. R. Cr. P. 33 Motion for New Trial

Rule 33 of the Federal Rules of Criminal Procedure allow a court, upon motion of the defendant to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Cr. P. 33. The Fifth Circuit has held that "the trial court should not grant a motion for new trial unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." United States v. Wall, 389 F.3d 457, 466 (5th Cir. 2004) (quoting United States v. O'Keefe, 128 F.3d 885, 898 (5th Cir. 1997)). "A new trial is granted only upon demonstration of adverse effects on substantial rights of a

defendant." Id. (citing United States v. Rasco, 123 F.3d 222, 228 (5th Cir. 1997)). As such, a district court's discretionary power to grant a new trial "should be exercised infrequently by district courts, unless warranted by 'exceptional' circumstances." United States v. Tarango, 396 F.3d 666, 672 (5th Cir.2005). "The trial judge may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial" under Rule 33. United States v. Robertson, 110 F.3d 1113, 117 (5th Cir.1997); United States v. Fuchs, 467 F.3d 889, 910 (5th Cir.2006). The Fifth Circuit "reviews the district court's denial of a Rule 33 motion for new trial for abuse of discretion." United States v. Yong Ping Liu, 288 Fed. Appx. 193, 211, 2008 WL 3244029, 15 (5th Cir. Aug. 6, 2008).

For the reasons stated below, the Court does not find that the evidence preponderated heavily against the verdict, and therefore a new trial is not warranted.

**B.   The Present Motion**

**(1)  Jury Instruction Regarding Wilson and Miranda's Status as "Public Officials" under § 201**

As an initial matter, the Court notes that it has already ruled on the substance of Wilson's claim regarding the propriety of the Court's "public official" instruction in the order denying Wilson's Rule 29 motion, as well as in a pre-trial motion in

limine by the Government.  See Rec. Docs. 53 & 104.  Even under

the more lenient standard applicable to Rule 33 motions for new

trial,[4] the Court's prior decision stands.  First, the Court

reiterates the Fifth Circuit's prior holding that § 201 "is a

comprehensive statute applicable to all persons performing

activities for or on behalf of the United States, whatever the

form or delegation of authority." United States v. Baymon, 312

F.3d 725, 728 (5th Cir. 2002).  Under this broad definition and

the Fifth Circuit's parallel broad interpretation thereof, Wilson

was a public official in the context of the crimes charged as a

matter of law.  Id. See also, e.g., United States v. Thomas, 240

F.3d 445, 446-48 (5th Cir. 2001); United States v. Vinson, 1991

WL 93063, *3 (4th Cir. June 5, 1991); United States v. Madeoy,

912 F.2d 1486, 1494 (D.C. Cir. 1990).  Furthermore, as

---

[4]  The Fifth Circuit has described the differing standards
applicable to a Rule 29 motion for acquittal versus a Rule 33
motion for new trial:

> According to the Federal Rules of Criminal Procedure, a
> court on motion of a defendant may grant a new trial if
> required in the interest of justice. Fed. R. Crim. P. 33.
> The trial judge may weigh the evidence and may assess the
> credibility of the witnesses during its consideration of
> the motion for new trial. No such discretion is allowed
> when the court decides a motion for a judgment of
> acquittal [under Rule 29]. Indeed, the court must view
> the evidence in a light most favorable to the verdict. In
> effect, the court assumes the truth of the evidence
> offered by the prosecution. Consequently, a review of a
> motion for new trial is reviewed under a more lenient
> standard than a motion for judgment of acquittal.

Robertson, 110 F.3d at 1117.

specifically held by the court in <u>Madeoy</u>, "whether an individual is a public official within the meaning of the statute is a question of law, and as such, a matter for judicial resolution." 912 F.2d at 1494 (affirming defendant's conviction over defendant's argument that the district court's instruction to the jury that defendant was in fact a public official for purposes of §201 constituted reversible error). The <u>Madeoy</u> court cited the Supreme Court's decision in <u>Dixson v. United States</u>, 465 U.S. 482, 484 (1984), in which the Court held that for purposes of the federal bribery statute, the "officers of a private, nonprofit corporation administering and expending federal community development block grants are 'public officials.'" <u>Madeoy</u>, 912 F.2d at 1494. The appellant in <u>Madeoy</u> relied on <u>Dixson</u> for the proposition that "because the district court in <u>Dixson</u> had submitted this issue to the jury, it must be a question of fact and not of law." <u>Id.</u> However, the <u>Madeoy</u> court disagreed:

> Nothing in the Supreme Court's decision in <u>Dixson</u> remotely supports this reasoning. The Court did not address the procedure used by the district court, and it never referred to the jury's determination or suggested that it was reviewing the "evidence" for the proposition that the defendants were public officials. **On the contrary, the Court reached its conclusion through an exercise in statutory interpretation, which conclusively shows that this is not a question for the jury.** For example, it considered the nature of the defendants' positions in relation to Congress's intent, as evidenced by the legislative history of the federal bribery statute.

<u>Id.</u> (emphasis added).

13

Furthermore, Wilson's reliance on <u>Gaudin</u> – a decision concerning a completely different criminal statute – is unfounded. In addition, even if <u>Gaudin</u>'s discussion of the crime of making false statements on federal loan documents in violation of 18 U.S.C. § 1001 were somehow relevant to the bribery and conspiracy charges on which Wilson was convicted, the issue in <u>Gaudin</u> regarding the propriety of a jury instruction is distinguishable from the "public official" instruction in this case. <u>Gaudin</u> concerned whether the district court's instruction to the jury that certain false statements by the defendant were "material" as required for violation of 18 U.S.C. § 1001 constituted a violation of the defendant's right under the Fifth and Sixth Amendments to have a jury make the ultimate determination of his innocence or guilt. <u>Gaudin</u>, 515 U.S. 506, 509-11 (1995). The Court held that the "materiality" of the defendant's false statements for purposes of §1001 presented a mixed question of law and fact that should have been left to the jury's determination. <u>Id</u>. at 512-14. In contrast, the issue of whether Wilson and Miranda were "public officials" for purposes of §201 is a purely legal issue. Accordingly, Wilson's motion for new trial based on the impropriety of the Court's "public official" status instruction must be denied.

**2)  Clayton's Testimony**

Wilson argues that Clayton's testimony regarding his

conclusion that Wilson had deleted emails during the period of the charged conspiracy constituted expert testimony. As such, Wilson argues that the Government's failure to comply with the notice and reporting requirements Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure required the exclusion of Clayton's testimony regarding the emails. In response, the Government essentially argues that Clayton's testimony was simply the proper opinion of a lay witness. Rule 701 provides that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." United States v. Yanez Sosa, 513 F.3d 194, 200 (5th Cir.2008).

In this case, Clayton's testimony regarding the deletion of emails from Wilson's account was properly admitted as simple fact or lay opinion testimony. Unlike the cases cited by Defendant in

15

which courts refused to categorize forensic investigators as lay witnesses, Clayton admitted on redirect that he was *not qualified to and had not performed* any forensic investigation, nor utilized any software or other forensic tests in his review of Wilson's email account.[5]  Rather, Clayton simply *observed* that Wilson's "sent" email folder had no contents dated from the period of the conspiracy; *observed* that Wilson's "inbox" folder included reply messages to emails that Wilson *had sent* during the period of the conspiracy; and, as a result, *rationally inferred* that Wilson had deleted the sent emails from the "sent" folder.  This series of observations and inferences resulted "from a process of reasoning familiar in everyday life," and thus Clayton's testimony was

---

[5]  See Trial Transcript of Clayton's testimony, which includes the following colloquy with counsel for the Government:

> Q.   Now, with respect to the review of these footprints and the e-mails, I don't want to give the jury the wrong impression, you're not a computer forensic examiner, are you?
> A.   No, I'm not.
> Q.   Did you use any forensic software to perform these analyses?
> A.   No, I did not.
> Q.   What type of background do you have to be able to perform these types of analyses?
> A.   It would be a normal computer user of Microsoft Office products.
> Q.   To the extent that there is another explanation for why a document would have these characteristics, are you aware of any other explanation?
> A.   I'm not aware.
> Q.   You're not an expert?
> A.   I'm not an expert.

properly admitted.  <u>United States v. Yanez Sosa,</u> 513 F.3d 194,

200 (5th Cir. 2008).

Further, Wilson's argument that Clayton's testimony was

somehow a surprise is unconvincing.  As noted by the Government,

all of Wilson's Corps emails were produced to him at or shortly

after his arraignment.  As further noted by the Government, a

simple review of those emails would have revealed precisely what

Clayton testified to – namely, the absence of any emails in

Wilson's "sent" folder during the period of the conspiracy.  As a

practical matter, knowing that he was charged with a conspiracy

involving the use of email, Wilson knew or should have known

the issue of the lack of emails in his "sent" folder might and in

all likelihood would be implicated in the Government's case.  For

these reasons, Wilson's motion for new trial with respect to

Clayton's testimony is without merit.

### 3)  Stroud's Testimony

Wilson's arguments regarding the exclusion of Stroud are

essentially the same arguments that were presented to the Court

at the <u>Daubert</u> hearing that led to Stroud's exclusion.  Thus, to

the extent that Wilson has not presented any new law or facts to

call into question the Court's prior ruling, his motion for new

trial based on Stroud's exclusion is denied for the reasons

stated at the <u>Daubert</u> hearing.

Nonetheless, to reiterate, Stroud admitted during his

_Daubert_ testimony that he _had not personally reviewed Wilson's email account_ and, more importantly, _had not personally analyzed and did not have any personal knowledge_ of the Corps' email server system. In his memorandum in support, Wilson notes that there are more than forty-five email programs in common use in this country. Given this admittedly complex and variegated framework, it is unclear to the Court how Stroud - who had admittedly never analyzed the Corps' server - could have determined what program was actually in use, much less the specific mechanisms and internal settings that were operating in that system during the period of the conspiracy. Furthermore, without any personal knowledge of the Corps' server or Wilson's email account, it is unclear how Stroud's testimony could have done anything other than confuse the jury. For these reasons, as well as the reasons stated during the trial of this matter, Wilson's motion for new trial based on the exclusion of Stroud is unavailing.

**4)  Exclusion of the Testimony of Tittle and Renton**

Wilson's arguments regarding the Court's exclusion of the testimony of Tittle and Renton boil down to this: Tittle and Renton would have testified that Heinrich lied to Mike Mayeaux regarding her alleged ability to provide sand and dirt fill for the Project, and thus she may have been lying about her ability and/or promise to "take care of her guys in the Corps" as well.

In other words, Wilson argues that Tittle and Renton would have

bolstered his defense that Heinrich was merely a shyster who

couldn't provide the services she promised and, more importantly,

was puffing about her contacts in the Corps and any "deal" she

had made with them regarding the Project.

The fatal flaw in this argument is that Heinrich's ability

to actually pay the bribe that Wilson was convicted of accepting

is irrelevant.  The statute under which Wilson was charged makes

it a crime for anyone

> (2) being a public official . . . [to] directly or
> indirectly, corruptly demand[], seek[], receive[],
> accept[], **or agree[] to receive or accept anything of**
> **value** personally or for any other person or entity, in
> return for:
>  . . .
>
> (B) being influenced to commit or aid in committing, or
> to collude in, or allow, any fraud, or make opportunity
> for the commission of any fraud, on the United States;

18 U.S.C. §201(b)(2)(B) (emphasis added).  As the Court ruled

prior to trial on the Government's motion in limine, both Wilson

and Heinrich were precluded from arguing "the non-transmission of

bribe funds as a defense to the charges in this case."  Rec. Doc.

52, p. 3.  The basis of this ruling, and the reason for which

Wilson's motion for new trial regarding the exclusion of Tittle

and Renton must be denied, lies in the fact that "it is of no

consequence that [a §201(b)(2)(B) defendant] was not involved in

the actual payment of the bribes."  United States v. Dixon,  658

F.2d 181, 191 (3d Cir. 1981). "Section 201(b)(2) requires only that something of value be offered or promised, not that a bribe be paid." Id. "In other words, a defendant violates § 201 by merely seeking or demanding a bribe, regardless of whether he accepts or even agrees to accept it." United States v. Muhammad, 120 F.3d 688, 693 (7th Cir. 1997); see also United States v. Gallo, 863 F.2d 185, 189 (2d Cir. 1988); United States v. Aguon, 851 U.S. 1158, 1185 (9th Cir. 1988) overruled on other grounds by Evans v. United States, 504 U.S. 255, 259 (1992) ("section 201 punishes even a mere demand or unconsummated agreement to accept a bribe. See 18 U.S.C. § 201(b)(2).")

While the Fifth Circuit has never directly addressed the issue of whether an unconsummated bribe can form the basis of a conviction under §201(b)(2)(B), the clear terms of the statute and the above-cited jurisprudence all support such a conclusion. Additionally, while it involved a prior version of §201 and a charge of bribing a juror, the Fifth Circuit's decision in United States v. Hernandez broadly indicated that "Section 201 requires only that something of value be offered or promised, not that a bribe actually be paid." 731 F.2d 1147, 1149 (5th Cir. 1984). It should also be noted that, in support of this proposition, the Fifth Circuit cited the Third Circuit's decision in United States v. Dixon, 658 F.2d 181, 191 (3d Cir. 1981). Importantly, the Dixon case involved a charge under the former §201(b)(2), *the*

20

*provisions of which are essentially the same*[6] as the current

version of §201(b)(2)(B) under which Wilson was convicted.  Thus,

while the Fifth Circuit has not directly ruled on the present

issue under the currently effective version of §201(b)(2)(B), its

statement in <u>Hernandez</u> and its reliance on <u>Dixon</u> both lead to the

conclusion that the non-transmission of a bribe is irrelevant for

purposes of a conviction under the statute.  As such, the Court's

decision to exclude the testimony of Tittle and Renton was

appropriate, and Wilson's motion for new trial on the ground of

their exclusion must be denied.  Accordingly,

**IT IS ORDERED** that Wilson's **Motion for New Trial (Rec. Doc.**

**105)** is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Wilson's **Request for Oral**

---

[6] The Third Circuit provided the following text of §201(b)
as it applied at the time of the <u>Dixon</u> decision:

(b) . . .
Whoever, directly or indirectly, corruptly gives, offers
or promises anything of value to any public official or
person who has been selected to be a public official, or
offers or promises any public official or any person who
has been selected to be a public official to give
anything of value to any other person or entity with
intent

***

    (2) to influence such public official or person who
    has been selected to be a public official to commit
    or aid in committing, or collude in, or allow, any
    fraud, or make opportunity for the commission of
    any fraud, on the United States

<u>Dixon</u>, 658 F.2d at 189, n.14.

21

**Argument on Motion for New Trial** is denied, as an oral hearing will not be necessary in light of the present ruling.

New Orleans, Louisiana, this 30th day of July, 2009.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE